964 So.2d 535 (2007)
Edna R. CROSS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-CA-00426-COA.
Court of Appeals of Mississippi.
May 8, 2007.
Rehearing Denied September 11, 2007.
*537 Imhotep Alkebu-Lan, Attorney for Appellant.
Office of the Attorney General by John R. Henry, Attorney for Appellee.
Before KING, C.J., IRVING and ROBERTS, JJ.
KING, C.J., for the Court.
¶ 1. Edna Cross appeals the dismissal of her motion for post-conviction relief. Cross asserted in her motion that her guilty plea was not knowing and voluntary. Finding no error, this Court affirms.

FACTS
¶ 2. Cross was indicted on two counts of aggravated assault, in violation of Mississippi Code Annotated Section 97-3-7(2) (Rev.2006). The charges stemmed from an altercation with her neighbors, in which her daughter, who was a co-defendant, also participated. Specifically, the State contended that Cross attacked her neighbor with a knife and that Cross' daughter attacked a neighbor with a hammer.
¶ 3. The case was scheduled for trial on April 13, 2005. During voir dire, Cross announced her desire to change her plea from not guilty to guilty and to enter into an open guilty plea. The trial court stopped the trial in order to hold the hearing on Cross' guilty plea. Following the guilty plea colloquy, the trial court accepted the guilty plea.
¶ 4. The trial court entered a judgment of guilty on both counts on April 14, 2005. Sentencing was set for May 26, 2005. Following a hearing, the trial court sentenced Cross to fifteen years' imprisonment on each count of aggravated assault, with the sentences to run concurrently. He then suspended eight years on each of those sentences.
¶ 5. Cross filed her petition for post-conviction relief on January 17, 2006. In that petition, Cross argued that the trial court erred in accepting her guilty plea because it was not knowing or voluntary. The trial court dismissed the petition without a hearing on February 16, 2006. Cross timely appealed.

STANDARD OF REVIEW
¶ 6. The standard of review for denial of a petition for post-conviction relief is whether the trial court's decision is "clearly erroneous." Brown v. State, 731 So.2d 595, 598(¶ 6) (Miss.1999). See also Kirksey v. State, 728 So.2d 565, 567(¶ 8) (Miss.1999). Questions of law are reviewed de novo. Brown, 731 So.2d at 598(¶ 6).

ANALYSIS
¶ 7. In this case, the trial court did not hold a hearing. In its order, the trial court noted that it had reviewed the entire record and that it was plain from the face of the motion that Cross was not entitled to the relief requested.
¶ 8. When the trial court reviews a petition for post-conviction relief, the trial court has an obligation to review the "original motion, together with all the files, records, transcripts and correspondence relating to the judgment under attack" to determine whether the defendant has proven the merit of the allegations by a preponderance of the evidence. Bilbo v. State, 881 So.2d 966, 967-68 (¶¶ 3-7) (Miss. 2004) (citing Miss.Code Ann. § 99-39-11(1), -23(7)). In those situations where the trial court "can determine that a factual assertion by the movant in a post-conviction relief proceeding is belied by unimpeachable evidence in the transcript of the case that led to conviction, no hearing is required and the trial court may summarily *538 dismiss the motion." Id. at 968(¶ 8) (citing Harris v. State, 578 So.2d 617, 620 (Miss.1991)).
¶ 9. Cross' petition for post-conviction relief raised the following issues: (1) that the plea was not knowing and voluntary because Cross had an eighth-grade education and had never before been charged with a crime and, therefore, was confused and did not understand the impact and implications of a guilty plea; (2) that Cross did not possess a weapon; (3) that Cross maintained her innocence and did not wish to plead guilty; and (4) that Cross did not receive adequate counsel.
¶ 10. In her appellate brief, Cross only addresses the following issues: (1) that at the time of her guilty plea, Cross was being treated for depression, which her counsel characterizes as a "mental illness;" (2) that Cross was confused by the proceedings, including the maximum sentence and fine that she might face and her waiver of her right to appeal if she pled guilty; and (3) that Cross proclaimed her innocence in the pre-sentencing report and at the sentencing hearing.
The issue of Cross' depression as a factor is procedurally barred.
¶ 11. Cross raises the issue of her depression for the first time on appeal. Accordingly, this Court is procedurally barred from addressing Cross' depression as grounds for finding her plea unknowing or involuntary. See Gardner v. State, 531 So.2d 805, 809 (Miss.1988) (citing Colburn v. State, 431 So.2d 1111, 1114 (Miss.1983)).
The trial court did not err in accepting Cross' guilty plea on the grounds that she was confused by the proceedings.
¶ 12. Cross also asserts that she was confused by the proceedings. She claims that she did not understand the possibility of receiving the maximum sentence and fine or that she waived her right to a direct appeal by pleading guilty. The trial transcript reveals that Cross initially indicated that she understood that she could receive up to twenty years for each of the two counts. When the trial judge realized that he had given an incorrect minimum sentence, however, he corrected his mistake and then reviewed again with Cross the maximum sentences she was facing. At that point, the trial court advised Cross that he could sentence her to consecutive sentences, which translated into forty years' imprisonment. When the trial court asked if she understood that, she responded, "I wasn't counseled on that." The trial judge repeated to Cross that she could receive consecutive sentences and asked her twice if she understood. She responded affirmatively but then asked to speak with her attorney.
¶ 13. Her attorney then asked her if she wished to proceed, given the possibility of a forty year sentence. She said no, but when asked by the trial court if she wanted to proceed with a trial or to plead guilty, she said she wanted to plead guilty. The trial court then asked Cross again if she understood the maximum penalty and fines. She said she did.
¶ 14. The plea colloquy proceeded, and the State set forth the evidence that it intended to prove at trial. Following the state's presentation, the trial court asked Cross if she understood that she was giving up her right to appeal by pleading guilty. She responded, "No sir, I didn't know that." The trial court then asked Cross twice if, knowing that she waived her right to appeal, she wished to proceed with the guilty plea. Twice, she responded, "Yes, sir."
¶ 15. Finally, as the trial court was preparing to end the plea colloquy and *539 accept Cross's guilty plea, the following exchange occurred:
By the Court: At this point it is not too late to stop the hearing, but it will be if I accept your guilty plea. I want to make sure that you want to plead guilty. Do you want to plead guilty?
Cross: No, sir.
Q: Okay. Then you will need to have a seat, and we will take your daughter's guilty plea, and we will start this trial up. You are telling me you do not want to plead guilty?
A: I'm not understanding what you are saying. I'm not understanding.
Q: I don't understand how to make it any clearer than the question "Do you want to plead guilty"?
A: Yes, sir.
¶ 16. The trial court again explained that he could stop the hearing and continue with the trial if Cross did not want to plead guilty, and she assured the trial court that she did desire to enter a guilty plea. The trial court then asked Cross whether she had any more questions regarding the minimum and maximum sentences and fines and the waiver of her right to appeal. Cross said, "No, sir" and then entered her plea of guilty on both counts of aggravated assault.
¶ 17. Under Mississippi law, "[a] plea is voluntary if the defendant knows what the elements are in the charge against him, including an understanding of the charge and its relation to him, the effect of the plea, and the possible sentence." State v. Santiago, 773 So.2d 921, 924(¶ 15) (Miss.2000) (citation omitted). The burden of proof lies with Cross to show involuntariness and that burden must be proven by a preponderance of the evidence. See Miss.Code Ann. § 99-39-23(7) (Rev.2000).
¶ 18. The transcript of the guilty plea hearing reflects that the trial court addressed all of the requirements to establish a knowing guilty plea, including the elements of the crime, the waiver of rights, and the minimum and maximum sentences. When Cross appeared to be uninformed of the consequences of her guilty plea-the possibility of consecutive sentences and the waiver of her right to appeal-the trial court consistently continued to address the perceived point of confusion with Cross until she stated that she understood the proceedings and until the trial court was satisfied that she understood the consequences of her guilty plea and the rights that she would waive if she did plead guilty. Cross fails to present any evidence other than the transcript itself that would contradict the trial court's holding that the plea was knowing and voluntary. Based upon this Court's review of the trial transcript, the Court cannot say that the trial court's decision to proceed with the guilty plea in the face of Cross' apparent initial misunderstandings was clearly erroneous, as the trial court did explain the consequences of the guilty plea to Cross until she understood the proceedings.
The trial court did not err in sentencing Cross despite her attempts to minimize her criminal behavior.
¶ 19. Cross' final point on appeal is that the trial court erred in sentencing Cross after she maintained that she was not armed with a weapon during the incident that led to her indictment on charges of aggravated assault, statements that her counsel labeled as proclamations of innocence. In the pre-sentencing report and at the sentencing hearing, Cross denied having a weapon. The pre-sentencing report states that Cross painted the victims as the aggressors and said, "We were fighting with our hands." When the trial judge questioned her about the pre-sentencing report at the sentencing hearing, she stated that she did not have a weapon. Instead, Cross claimed that, she "had a ring on. I had a ring. They held it. *540 When I got arrested, they got the ring. It's real sharp." Cross denied that she told the victim that she would cut her throat and further denied that her daughter had a hammer at the time of the incident.
¶ 20. These statements directly contradict Cross' statement under oath during her guilty plea. During the plea colloquy, the State advised the trial court that, at trial, the State would show that Cross attacked Darrel Craven with a knife, that Cross' daughter attacked Rachel Goodwin with a hammer, and that each woman was "aiding, abetting, assisting, and encouraging the other in the attack, so that each would be responsible for the actions of the other in using the weapons." Cross stated, at the guilty plea hearing, that she did not disagree with the facts as presented by the State. Additionally, in her Petition to Enter Guilty Plea, Cross, under oath, Cross stated that she did "cause or attempt to cause bodily injury to Darrel Craven, by striking him in the back with a knife, a deadly weapon and cause or attempt to cause bodily injury to Rachel Goodwin, by hitting her in the head with a hammer, a deadly weapon."
¶ 21. When the trial court heard Cross' second version of the events during the sentencing hearing, it concluded that Cross likely was ashamed to admit to her actions in front of her family and friends in attendance at the sentencing hearing. Notwithstanding those contradictory statements, however, the trial court decided to proceed with sentencing.
¶ 22. The trial court did not err in proceeding with sentencing. Cross did not attempt to withdraw her guilty plea at the sentencing hearing, nor should the trial court have been required to raise the issue sua sponte in response to Cross' allegations that her role in the crime was less than she previously stated. In order for a trial court to accept a guilty plea, "the law does not require that a defendant admit every aspect of a charge against him. Instead, a guilty plea will be considered valid even though the defendant makes only a `bare admission of guilt.'" Gaskin v. State, 618 So.2d 103, 106 (Miss. 1993). Further, a guilty plea may be accepted, even when accompanied by protestations of innocence, if the evidence against the defendant is sufficient to sustain the guilty plea. See Reynolds v. State, 521 So.2d 914, 917 (Miss.1988) (citations omitted) (stating that "in sum, admission of guilt is not a constitutional requisite of an enforceable plea. Knowing and voluntary action by the accused is, and, as well, an independent evidentiary suggestion of guilt.").
¶ 23. A review of the record reveals that Cross did enter her guilty plea knowingly and voluntarily. Additionally the State provided the testimony of five eyewitnesses who observed all or part of the incident. Accordingly, Cross' subsequent equivocation with regard to the extent of her culpability (i.e. her possession of a weapon and her claims that she was not the aggressor) at the sentencing phase is simply not sufficient to establish that Cross' plea was not knowing and voluntary.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY DISMISSING APPELLANT'S MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.