KING, C. J,
 

 for the Court:
 

 ¶ 1. Fredrick Russell appeals the judgment of the Wayne County Circuit Court denying his motion for post-conviction relief. On appeal, Russell raises two issues:
 
 *433
 
 (1) the record does not support the denial of the motion to vacate the trial court’s denial of post-conviction relief, and (2) his guilty plea was not voluntarily and intelligently entered because he received ineffective assistance of. counsel. Finding no error, we affirm the judgment of the trial court.
 

 FACTS
 

 ¶ 2. On March 9, 2007, Russell waived his indictment to the charge of possession of marijuana over one ounce with intent to sell. Russell then pled guilty and was sentenced to eight years in the custody of the Mississippi Department of Corrections (MDOC). On November 26, 2007, Russell filed a motion for post-conviction relief in cause no. 2007-211-B, arguing that because he had received ineffective assistance from his counsel, his guilty plea was not voluntarily and intelligently entered. Russell attached affidavits from his wife, Machelle Russell; his mother-in-law, Alice Colter; and his mother, Catherine Russell, in support of his claim.
 

 ¶ 3. In letters filed by the Wayne County Circuit Clerk on April 2, 2008, and September 9, 2008, Russell inquired about the status of his motion for post-conviction relief. The record failed to indicate that any action had been taken following the September 9, 2008, letter. On January 22, 2009, the trial court granted a motion to dismiss the motion for post-conviction relief for cause no. 2007-171-B. On February 19, 2009, Russell filed a motion to resume his motion for post-conviction relief. On February 23, 2009, the trial judge notified Russell by letter that an extensive search of the trial court’s records revealed that Russell had no pending motions for post-conviction relief in the circuit court. The trial judge stated in his response that Russell had filed a motion for post-conviction relief on September 24, 2007, but Russell had subsequently filed a motion to dismiss that motion on October 5, 2007. The motion to dismiss the September 24, 2007, motion for post-conviction relief was granted on January 22, 2009.
 

 ¶ 4. On March 13, 2009, the circuit court denied Russell’s motion for post-conviction relief. On March 26, 2009, Russell filed a motion to vacate the order denying the petition for post-conviction relief. On August 11, 2009, the circuit court denied Russell’s motion to vacate the order. Russell now appeals.
 

 STANDARD OF REVIEW
 

 ¶ 5. We will not disturb the trial court’s denial of a motion for post-conviction relief unless the trial court’s factual findings are found to be clearly erroneous.
 
 Smith v. State,
 
 29 So.3d 126, 128 (¶ 8) (Miss.Ct.App.2010). The applicable standard of review where questions of law are raised is de novo.
 
 Id.; see Hooks v. State,
 
 22 So.3d 382, 384 (¶ 8) (Miss.Ct.App.2009).
 

 ANALYSIS
 

 I. Dismissal of the September 24, 2007 Motion for Post-Conviction Relief
 

 ¶ 6. “When the trial court reviews a petition for post-conviction relief, the trial court has an obligation to review the ‘original motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack’ to determine whether the defendant has proven the merit of the allegations by a preponderance of the evidence.”
 
 Cross v. State,
 
 964 So.2d 535, 537 (¶ 8) (Miss.Ct. App.2007) (citing
 
 Bilbo v. State,
 
 881 So.2d 966, 968 (¶ 7) (Miss.2004)). In situations where the trial court can make a determination that a factual assertion in a post-conviction-relief proceeding is belied by unimpeachable evidence in the transcript
 
 *434
 
 of the case that led to conviction, a hearing is not required, and the trial court may summarily dismiss the motion.
 
 Id.
 
 at 537-38 (¶ 18). “An evidentiary hearing is not necessary where the allegations in a petition for post-conviction relief are specific and conclusory.”
 
 Cole v. State,
 
 666 So.2d 767, 777 (Miss.1995) (citation omitted).
 

 ¶ 7. In this case, Russell was informed by a court official that at that particular time he did not have a pending motion for post-conviction relief. Further investigation by the trial court revealed that Russell had in fact filed two motions for post-conviction relief and had petitioned the court to only dismiss one, which pertained to cause no. 2007-171-B. In its August 11, 2009, order denying Russell’s motion to vacate the March 13, 2009, order which denied Russell’s motion for post-conviction relief, the trial court stated that Russell had been misinformed. That misinformation had been communicated to Russell in the February 23, 2009, letter. The trial court explained that the misinformation was the result of a docketing error and, thus, provided clarity as to the mis-communication. The trial court also stated the docketing error presented no obstacle to Russell in seeking post-conviction relief and ruled on the merits of the motion.
 

 ¶ 8. We find that the trial court’s failure to grant an evidentiary hearing was not error. An evidentiary hearing would not have revealed any additional evidence that Russell’s motion did not adequately present within the motion. Therefore, this issue is without merit.
 

 II. Ineffective Assistance of Counsel
 

 ¶ 9. Russell argues that he received ineffective assistance from his counsel. Specifically, Russell alleges that counsel coerced him into entering a guilty plea informing him that he would only serve three-and-a-half years of an eight-year sentence due to newly passed legislation, which gave him thirty-days credit for every thirty days served. In support of this allegation, Russell attached three sworn affidavits from family members. Russell also asserts that counsel was ineffective because, despite being aware that Russell had a mental disability for which he was taking medication, counsel did not request a competency examination to have him deemed incapable of voluntarily entering a guilty plea.
 

 ¶ 10. To prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong test outlined in
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 
 Strickland
 
 requires that the defendant show that counsel’s performance was deficient and that counsel’s deficient performance prejudiced the defense, thus depriving him of a fair trial.
 
 Id.
 
 In cases, in which the defendant alleges ineffective assistance of counsel within the context of a guilty plea, the defendant must show by a preponderance of the evidence, that there is a reasonable probability that had counsel’s assistance been effective, he would not have pled guilty, but would have insisted on going to trial.
 
 Davis v. State,
 
 5 So.3d 435, 437 (¶7) (Miss.Ct.App.2008) (citing
 
 Pleas v. State,
 
 766 So.2d 41, 43 (¶ 7) (Miss.Ct.App.2000)).
 

 ¶ 11. The trial court denied Russell’s claim of ineffective assistance of counsel, stating that Russell lacked credible evidence to support his claim of ineffective assistance of counsel. The trial court indicated that although Russell attached copies of affidavits from family members, each affidavit was an exact duplicate of the other, with only the name and relationship of the petitioner having been changed. The trial court also noted that the allegations made in the petition and in the supporting affidavits were in conflict with Russell’s
 
 *435
 
 sworn testimony given at his guilty plea hearing and were insufficient to support his claim of ineffective assistance of counsel.
 

 ¶ 12. Russell failed to provide a copy of the transcript of his plea hearing in support of his claim. In making a determination as to whether the trial court was proper in denying a defendant’s motion for post-conviction relief, absent a transcript, the trial court’s findings are entitled to a degree of deference from this Court.
 
 See Doss v. State,
 
 19 So.Sd 690, 694 (¶ 5) (Miss.2009);
 
 Mullins v. Ratcliff,
 
 515 So.2d 1188, 1189 (Miss.1987). However, the record does include a written opinion by the trial court which references relevant portions of the plea colloquy, which supports the trial court’s finding of fact. In its written opinion, the trial court indicated that Russell in his sworn testimony during the plea hearing acknowledged that he was aware that any opinion given by his attorney or anyone else as to the amount of time he would actually be incarcerated was merely an opinion and that the ultimate decision as to the amount of time he served was left to the MDOC and the Mississippi Parole Board and that those entities were not bound by the opinions of others.
 

 ¶ 13. Russell also claims that his counsel was ineffective because counsel was aware of his mental disability and did not request a competency examination. Russell maintains that a competency examination would have deemed him incapable of entering a guilty plea. “The standard of competency necessary to enter a plea of guilty is the same as that for determining competency to stand trial.”
 
 Smith v. State,
 
 831 So.2d 590, 593 (¶ 11) (Miss.Ct.App.2002) (quoting
 
 Page v. State,
 
 812 So.2d 1039, 1041 (¶ 6) (Miss.Ct.App. 2001)). That standard is “whether the defendant has ‘sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding” and ‘has a rational as well as factual understanding of the proceedings against him.’ ”
 
 Magee v. State,
 
 914 So.2d 729, 733 (¶ 11) (Miss.Ct. App.2005) (quoting
 
 Snow v. State,
 
 800 So.2d 472, 489 (¶ 61) (Miss.2001)).
 

 ¶ 14. According to the Uniform Rules of Circuit and County Court 9.06, “[i]f before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court in accordance with § 99-13-11 of the Mississippi Code Annotated of 1972.”
 
 See Smith,
 
 831 So.2d at 593 (¶ 10). Although Russell made the trial court aware that he suffered from a brain injury, there was no indication that his brain injury affected his ability to understand the consequences of entering a guilty plea. The trial court’s opinion indicated that when the trial judge asked Russell whether he had read and understood the plea petition, Russell answered affirmatively. Further, there was no evidence in the record to indicate Russell was prejudiced by counsel’s failure to request a competency examination.
 

 ¶ 15. Because this Court gives great weight to the statements made under oath during a guilty plea hearing, we find that the trial court did not error in denying Russell’s claim of ineffective assistance of counsel.
 
 See Sanchez v. State,
 
 913 So.2d 1024, 1027 (¶ 8) (Miss.Ct.App.2005) (citing
 
 Young v. State,
 
 731 So.2d 1120, 1123 (¶ 12) (Miss.1999)).
 

 ¶ 16. In addition, Russell argues that because he was erroneously advised by counsel and lacked the mental capacity to enter a valid plea, his plea was involuntarily and unintelligently entered.
 
 *436
 
 “Where erroneous legal advice on sentencing has been given to a defendant by his counsel and/or defendant relied on assertions or predictions made by his counsel, no error attaches if the record affirmatively shows the defendant was correctly advised of his peril by the sentencing court.”
 
 Lawrence v. State,
 
 970 So.2d 1291, 1295 (¶ 7) (Miss.Ct.App.2007) (citing
 
 Roland v. State,
 
 666 So.2d 747, 749-50 (Miss.1995)).
 

 ¶ 17. Although Russell failed to submit a copy of the plea hearing transcript, the trial court included relevant portions of the plea colloquy in its written opinion, dated March 13, 2009. The trial court’s opinion indicated that Russell acknowledged that he understood that pleading guilty to possession of marijuana over one ounce with intent carried a possible sentence of zero to thirty years in the custody of the MDOC, but he still desired to plead guilty.
 

 ¶ 18. The record clearly indicates that Russell was correctly advised of his sentence by the trial court. In addition, the following dialogue of the plea hearing extracted from the court’s opinion shows that Russell was questioned at length to establish that his guilty plea was voluntary. The dialogue is as follows:
 

 Q. All right. Now Paragraph 6 states, I also understand that if I plead guilty, the Court may impose the same punishment as if I had pled not guilty, stood trial and was convicted by a jury. Do you understand that?
 

 A. Yes, sir.
 

 Q. Mr. Russell, according to your plea bargain agreement, you will be sentenced to serve eight years with the Mississippi Department of Corrections. You will be ordered to pay a $5,000 fine, but $3,000 of that will be suspended; so you’ll owe a $2,000 net fine. You owe court costs in the amount of $276.50 and a $300 crime lab fee for a total of $2,576.50....
 

 Your indictment, Cause Number 07-58-K, that case-indictment will be nol prossed which means dismissed by separate order, and the State agrees not prosecute another unindicted sale charge pending against you.
 

 Now, is that your understanding of the full and complete plea agreement that you’ve reached with the State in your case and your understanding of how it works?
 

 A. Yes, sir.
 

 ¶ 19. Russell also acknowledged that he understood that according to the plea agreement he signed under oath, he would be sentenced to eight years in the custody of the MDOC. The trial court’s opinion states:
 

 .... I also understand that if I pled “GUILTY” to this charge of possession of marijuana (237.2 grams) with intent to distribute, the possible sentence is zero (0) to thirty (30) years imprisonment and/or a fine of $5,000 to $1,000,000.
 

 [[Image here]]
 

 I know also that the sentence is up to the court; that the court is not required to carry out any understanding made by me and my attorney with the District Attorney, and further, that the Court is not required to follow the recommendation of the District Attorney, if any. If the court does not accept the plea bargain agreement, I have the right to immediately withdraw my guilty plea. The District Attorney shall make the following recommendation concerning my sentence and I have agreed to accept the same; as follows: 8 years with MDOC, with nolle pros of Cause Number 07-85-K and [the District Attorney agrees he will] not prosecute unindicted sale charge in Wayne County, $5,000 with $3,000 suspended, net $2,000 fine, court
 
 *437
 
 costs of $276.50, [crime] lab fee $300, total $2,576.50.
 

 [[Image here]]
 

 I understand that whether I am released from custody prior to the end of my sentence is within the sole discretion of the Mississippi Department of Corrections .... I further understand that my attorney may have made estimation [sic] to me of whether I might be released on parole, house arrest or any other form of early release, but whether said release is granted is entirely up to the Parole Board and the MDOC.
 

 ¶ 20. Russell also alleges that because he suffers from a brain injury and was taking paroxetine and Zyprexa, he did not have the mental capacity to enter a valid guilty plea. Russell maintains that had he been given a competency examination, he would have been deemed incapable of entering a valid guilty plea. The trial court must order a hearing to determine competency if a trial judge has reasonable grounds to believe that a defendant is incompetent.
 
 Wallace v. State,
 
 957 So.2d 1047, 1049 (¶ 5) (Miss.Ct.App.2007). What is reasonable rests within the discretion of the trial judge because the judge sees the evidence first hand and observes the demeanor and behavior of the defendant.
 
 Smith,
 
 831 So.2d at 593 (¶ 11).
 

 ¶ 21. In its opinion, the trial court stated that in paragraph 13 of Russell’s sworn petition to enter a guilty plea, Russell had acknowledged the following:
 

 I do not claim to now be nor, have I ever suffered from any type of mental disease or disorder, except I am disabled and have seizures due to brain injury.
 

 Although Russell made the court aware that he was disabled because of seizures, he did not offer any evidence of any type of mental impairment or disability that would have affected his capacity to voluntarily enter a guilty plea. There was no indication that Russell’s demeanor or behavior should have caused the trial court to order a competency examination. However, because the trial court was made aware of Russell’s mental disability, it made further inquiry. In its opinion, the trial court cited the following dialogue which indicates the Court’s effort to address Russell’s mental capability:
 

 Q. All right. Can you read and write?
 

 A. Yes, sir.
 

 Q. And you’ve read your petition and feel like you understand it?
 

 A. Yes, sir.
 

 Q. Now, do you claim to have ever suffered from any mental disease or disorder? Mr. Russell, you state that you are disabled, have seizures due to a brain injury. Is that correct?
 

 A. Yes, sir.
 

 Q. Do you take medication for that?
 

 A. Yes sir.
 

 Q. Other than your plea bargaining agreements that I just went over with you, has any law officer or agent of any branch of the government either told you or inferred to you that you would come out better pleading guilty rather than go to trial in order to put pressure on you to make you plead guilty this morning?
 

 A. No, sir.
 

 Q. Do you understand that by pleading guilty, you are giving up your right to appeal on any issue concerning the charges in your indictment? Do you understand that?
 

 A. Yes, sir.
 

 [[Image here]]
 

 Q. All right. That’s all the questions I need to ask you concerning your guilty pleas. Do any of you have any questions concerning anything that I’ve asked you this morning about your
 
 *438
 
 guilty plea, your plea bargain agreement or how it works? Mr. Russell, do you have any questions?
 

 A. No, sir.
 

 ¶ 22. The record indicates that the trial court questioned Russell about his mental capability and thoroughly informed Russell of the consequences of his guilty plea during the plea colloquy.
 

 ¶ 23. Thus, we find no evidence in the record before this Court to support Russell’s claim that he received ineffective assistance of counsel. Therefore, this issue is without merit.
 

 ¶ 24. THE JUDGMENT OF THE WAYNE COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WAYNE COUNTY.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.